UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRA KOENIGSBERG, MAXWELL KOENIGSBERG, and OLGA STAMBLER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, <br><br> Defendant. | **MEMORANDUM OPINION & ORDER** <br><br> 23 Civ. 1044 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiffs Alexandra Koenigsberg, Maxwell Koenigsberg, and Olga Stambler bring this putative class action against The Board of Trustees of Columbia University in the City of New York ("Columbia"), pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (Cmplt. (Dkt. No. 1)) Plaintiffs allege violations of Sections 349 and 350 of the New York General Business Law ("GBL") and an unjust enrichment claim under New York law. (Id. ¶¶ 57-94)

Columbia has moved to dismiss for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. Rule 12(b)(6). (Def. Mot. (Dkt. No. 25))

For the reasons stated below, Columbia's Rule 12(b)(6) motion to dismiss will be granted.

## BACKGROUND

I.    FACTS[1]

Columbia's Board of Trustees "manages, controls, and acts as the governing body of Columbia University," "a private university located in New York, New York." (Cmplt. (Dkt. No. 1) ¶¶ 4, 9)  Plaintiffs Alexandra Koenigsberg and Maxwell Koenigsberg applied for admission to Columbia University in the fall of 2018, and their mother, Plaintiff Olga Stambler, paid the $85 application fee.  (Id. ¶¶ 1-3)

"[W]ith the rise of more objective college rankings published in major magazines and newspapers," universities are "judged on various factors that affect [their] ranking[,] as on the list of 'best' universities, each and every year."  (Id. ¶ 10)  "The most popular and well-known undergraduate university ranking is performed by the U.S. News & World Report in its annual survey of Best American Universities."  (Id. ¶ 12)  "Over the last three decades, U.S. News's rankings have become so impactful, in fact, that a one-rank improvement in the rankings results in a nearly 1% rise in applicants the following year."  (Id.)  "In compiling its rankings, U.S. News asks for universities to self-report data in 17 fields, that it then uses to rank the various universities and colleges, including:  graduation and retention rates, class size, faculty quality as measured by the percent of faculty with a terminal degree in the faculty field (usually a PhD), percentage of full-time faculty, student-faculty ratio, and others."  (Id. ¶ 13)

The Complaint alleges that "college applicants . . . rely on a university's rank in the U.S. News rankings to select which school each student will apply to."  (Id. ¶ 15)  "Colleges and universities in the United States compete for applicants, and each college and university

---

[1]  The Court's factual statement is drawn from the Complaint.  The Complaint's well-pled factual allegations are presumed true for purposes of resolving Defendant's motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

understands that the greater the number of applicants to a school, the greater the application-fee revenue to that school. Columbia also knew or should have known that a one-rank improvement in the U.S. News rankings for undergraduate universities leads to a one percentage-point gain in the number of applications." (Id. ¶ 16) "Columbia used the U.S. News rankings to recruit undergraduate applications and knew that consumers would treat those rankings as objective metrics relative to Columbia's peers." (Id. ¶ 17)

"In 1988, Columbia was ranked 18th in the U.S. News rankings . . . before accomplishing a rise from 8th to 4th to eventually as high as 2nd in the 2010s-2020s." (Id. ¶ 19) "This rise was due to the reporting of false or misleading data, though, and not to educational or student life improvements." (Id. ¶ 20) In 1997, "in an effort to improve transparency with respect to college and university hard data, the Common Data Set Initiative ('CDS') was created."[2] (Id. ¶ 21) The CDS established "clear, standard data items and definitions." (Id.) "[F]or over two decades, Columbia refused to participate in the CDS," and "[w]hen Columbia did reveal its information to CDS in 2022, it became clear that the data it had previously submitted to U.S. News was false." (Id.)

According to Plaintiffs, "beginning around 2010-2011, Columbia began reporting false and misleading data to U.S. News in at least . . . seven ways." (Id. ¶ 22) "[T]hese areas of false reporting were made known to the public by Michael Thaddeus, a mathematics professor at

---

[2]  The Complaint does not explain what the Common Data Set Initiative is, but it cites to the organization's website. (See Cmplt. (Dkt. No. 1) at 5 n.5)  The CDS website explains that the CDS "initiative is a collaborative effort among data providers in the higher education community and publishers as represented by the College Board, Peterson's, and U.S. News & World Report. The combined goal of this collaboration is to improve the quality and accuracy of information provided to all involved in a student's transition into higher education, as well as to reduce the reporting burden on data providers." Common Data Set Initiative, https://www.commondataset.org.

Columbia, when he published an article in February and March 2022 revealing the false and misleading data and how Columbia used that false and misleading data to manipulate its rankings within the US News rankings." (Id. ¶ 36)

According to Thaddeus, "Columbia reported false and misleading data regarding class size between 2010-11 and the present." (Id. ¶ 23) "Columbia submitted data to U.S. News, very consistently every year, that over or around 80% of its undergraduates attended classes with fewer than 20 students while fewer than 10% attended classes with 50 or more students." (Id. ¶ 24) "[T]he true number of classes with fewer than 20 students for undergraduates was at or around 57%." (Id. ¶ 25)

Columbia also falsely reported that 100% of its full-time faculty had a terminal degree – the highest degree available – in their field. (Id. ¶ 27) The "true percentage was only 95%." (Id.)

Columbia also falsely reported that 96.5% of its non-medical faculty were full-time. "[I]n reality, the percentage of actual full-time faculty is close to 50%." (Id. ¶ 28)

"Columbia [also] reported false and misleading data regarding its student-faculty ratio as 6 to 1, which it has reported every year since 2006.  The true number is between 11 to 1 and 8 to 1." (Id. ¶ 29)

"Columbia reported false and misleading data to the government and U.S. News regarding the annual amount of money spent on instruction per student." (Id. ¶ 30) "Columbia reported that its instructional spending in 2019-20, for example, was slightly over $3.1 billion," when "[t]he real number is at least a billion dollars less." (Id.)

"Columbia reported false and misleading data to the government and U.S. News regarding the annual amount of money spent on research." (Id. ¶ 31)

Finally, "Columbia reported false and/or misleading data regarding its student outcomes – namely their graduation and retention rates along with their student debt incurred." (Id. ¶ 32)

According to Plaintiffs, "[h]ad Columbia reported its actual data to U.S. News, it would not have ranked in the top 5 or even top 10 U.S. national universities" in the U.S. News rankings. (Id. ¶ 35)

In September 2022, after the publication of Thaddeus' article, Columbia's Provost, Mary Boyce, issued a statement "admit[ting] that certain findings of the report were correct." (Id. ¶ 37) Boyce acknowledged that Columbia had reported inaccurate data concerning the percentage of classes with less than 20 students and the percentage of faculty with a terminal degree. (Id. ¶¶ 37-39) Columbia did not address the other five data points cited in Thaddeus' article. (Id. ¶ 40)

According to the Complaint,

> [u]ndergraduate applicants apply to more than one school and usually several. Because of the typical acceptance rates for schools like Columbia, with an average acceptance rate over the past decade of around 5.6%, college applicants will group schools into categories, such as safety schools, likely admissions schools, and reaches. A student's reach school will nearly always be tied to that school's acceptance rate. Schools like Columbia, with acceptance rates under 10%, are like lotteries, and act as reach schools for all its applicants.

(Id. ¶ 18)

Plaintiffs further assert that "each student's application to a reach school is a lottery ticket. And because the cost of that lottery ticket is almost universally now $85, only a few such applications may be made." (Id. ¶ 43) "Over the years, in part because of the false data reporting, applications have increased and the acceptance rate [has] decreased." (Id. ¶ 44)

According to the Complaint, "[n]either plaintiff Koenigsberg would have applied for admission to Columbia and plaintiff Stambler would not have paid for such applications had

5

they known the truth about Columbia's data and what should have been its real ranking in the U.S News service."  (Id. ¶ 47)

## II.    PROCEDURAL HISTORY

The Complaint was filed on February 7, 2023.  (Dkt. No. 1)  On July 19, 2023, Columbia moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Def. Mot. (Dkt. No. 25))

In moving to dismiss, Columbia argues that (1) Plaintiffs have not alleged a concrete injury, and thus lack Article III standing; and (2) the Complaint fails to state a claim. (See Def. Br. (Dkt. No. 26))

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)."  Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'"  APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)); see also Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").  "Under

Rule 12(b)(1)[,] even 'a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" Castillo v. Rice, 581 F. Supp. 2d 468, 471 (S.D.N.Y. 2008) (quoting Frisone v. Pepsico Inc., 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005)).

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); Warth v. Seldin, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.; see also Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." (citing Makarova, 201 F.3d at 113)). In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

"A motion to dismiss a complaint for lack of standing is properly brought pursuant to Rule 12(b)(1) . . . because it relates to the court's subject matter jurisdiction." ED Capital, LLC v. Bloomfield Inv. Res. Corp., 155 F. Supp. 3d 434, 446 (S.D.N.Y. 2016), aff'd in rel. part, 660 F. App'x 27 (2d Cir. 2016).

**B.** **Rule 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. at 555, and a plaintiff's claims must be "plausible on [their] face," id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," id. at 570. "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers, 282 F.3d at 153; Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

## II.    STANDING

### A.    Applicable Law

"'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve [his, her, or its] grievance.  This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)). "Standing issues go to a court's subject matter jurisdiction and may be raised at any time." Fletcher v. City of New London, 16 Civ. 241 (MPS), 2017 WL 690533, at *3 (D. Conn. Feb. 21, 2017).

To establish constitutional standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan, 504 U.S. at 560-61).

The requisite "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized[;] . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted).  In other words, "[t]he injury-in-fact requirement demands not only the existence of a legally cognizable

injury, but also that the plaintiff [is] 'among the injured.'" <u>Keepers, Inc. v. City of Milford</u>, 807

F.3d 24, 42 (2d Cir. 2015) (quoting <u>Lujan</u>, 504 U.S. at 563). Plaintiff bears the burden of

establishing the elements of standing, and "at the pleading stage, the plaintiff must 'clearly . . .

allege facts demonstrating' each element." <u>Spokeo</u>, 578 U.S. at 338 (quoting <u>Warth v. Seldin</u>,

422 U.S. 490, 518 (1975)). "[D]istrict courts should be mindful that <u>named</u> plaintiffs in a class

action 'must allege and show that they personally have been injured.'" (quoting <u>Warth</u>, 422 U.S.

at 502) (emphasis in original).

     **B.**     <u>**Analysis**</u>

     Columbia argues that "Plaintiffs do not allege a concrete injury and therefore lack

Article III standing." (Def. Br. (Dkt. No. 26) at 11)

     Plaintiffs do not directly respond to Columbia's standing argument, but merely

say that "if the Court finds a GBL injury, Article III standing is also established." (<u>See</u> Pltf. Opp.

(Dkt. No. 29) at 17)

     Economic injuries are, of course, sufficient to meet the injury-in-fact requirement

for purposes of standing. <u>See</u>, <u>e.g.</u>, <u>Transunion LLC v. Ramirez</u>, 594 U.S. 413, 425 (2021) ("The

most obvious [concrete injuries under Article III] are traditional harms, such as . . . monetary

harms."); <u>Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.</u>, 710 F.3d 71, 85 (2d Cir.

2013) ("Even a small financial loss is an injury for purposes of Article III standing."). A

plaintiff can show an economic injury-in-fact by alleging "an overpayment or 'price premium,'

whereby a plaintiff pays more than she would have but for the deceptive practice" <u>Izquierdo v.</u>

<u>Mondelez Int'l Inc.</u>, 16 Civ. 4697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016), or

by alleging that if she had "known the truth," she "would not have purchased a product."

<u>Colpitts v. Blue Diamond Growers</u>, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021).

Here, Plaintiffs allege that they "wasted their $85 application fee on a school that should have been ranked much lower and so would not have been a school that the Plaintiffs or the Class would have applied to."  (Cmplt. (Dkt. No. 1) ¶ 67; see id. ¶ 77 ("Columbia's violations of GBL § 349, as described herein, have directly caused Plaintiff and the Class members to have suffered ascertainable losses – each one paid an $85 application fee they would not have to Columbia had the truth been known – and defendant is liable for that amount because they were the proximate cause of those damages."); id. ¶ 87 ("Columbia's violations of GBL § 350, as described herein, have directly caused Plaintiff and the Class members to have suffered ascertainable losses – each one paid an $85 application fee they would not have paid to Columbia had the truth been known – and defendant is liable for that amount because it was the proximate cause of those damages."))

Columbia responds that at the time of Plaintiffs' applications – and regardless of the false data Columbia had provided to U.S. News – Columbia was in the "top 5" of the U.S. News rankings.  Accordingly, the $85 application fee did in fact permit Plaintiffs to apply to a school that was ranked in the "top 5" in the U.S. News rankings, and Plaintiffs received what they paid for.

According to Columbia,

> [t]he fundamental flaw in Plaintiffs' claims is that the 2018 [U.S. News] ranking was a historical fact.  Plaintiffs do not claim that they sought to apply to a school with certain underlying characteristics that would justify a top five rank, nor do they argue that schools deserving of a top five rank differed in some way from Columbia.  Plaintiffs sought only one characteristic – a top five [U.S. News] rank. Whether one agrees or disagrees with [U.S. News'] ranking methodology or the data submitted in connection therewith, the resulting rank is a number appearing in a published list.  That Plaintiffs may now believe the school should have had a lower rank does not change the fact that when they applied, the school met the sole criterion they deemed relevant to their application decision.

(Def. Br. (Dkt. No. 26) at 12-13)

11

This argument is not persuasive.  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). Plaintiffs allege that they would not have paid the application fee for Columbia "had they known the truth about Columbia's data and what should have been its real ranking in the U.S. News service."  (Cmplt. (Dkt. No. 1) ¶ 47)  It is a reasonable inference from this allegation that Plaintiffs did in fact seek to "apply to a school with certain underlying characteristics that would justify a top five rank."  (Def. Br. (Dkt. No. 26) at 12)

Accordingly, Columbia's point that its 2018 U.S. News ranking is a "historical fact" is irrelevant.  Plaintiffs' claimed injury flows from the fact that Columbia's "top 5" ranking was based on falsified data.  Plaintiffs contend that they would not have paid the $85 fee to apply to Columbia if they had known that Columbia was not in fact a "true" "top 5" university.  "There is some 'concrete and particularized' injury in paying for one item and receiving another, even if you ultimately receive the 'benefit of your bargain' from a purely objective economic standpoint."  Borenkoff v. Buffalo Wild Wings, Inc., 16 Civ. 8532 (KBF), 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018).

Alleging "[i]njury in fact is a low threshold," which the Second Circuit has held "need not be capable of sustaining a valid cause of action."  Ross v. Bank of Am., N.A.(USA), 524 F.3d 217, 222 (2d Cir. 2008) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006)).  The Court concludes that Plaintiffs have sufficiently alleged injury under Article III and therefore have standing to seek monetary relief.

## III.   GENERAL BUSINESS LAW CLAIMS

Columbia contends that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.  Columbia argues, inter alia, that Plaintiffs' claims are time-barred

and that Plaintiffs did not suffer an actual harm under GBL §§ 349 and 350.  (Def. Br. (Dkt. No. 26) at 14, 16)

### A.   **Applicable Law**

GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," while GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. GBL §§ 349, 350.  "'The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to [§] 349,' . . . and therefore the Court will merge its analysis of the two claims." Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (quoting Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002)).

To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Wynn v. Topco Assocs., LLC, 19 Civ. 11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)).  To survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a [representation] might conceivably be misunderstood by some few consumers."  Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (alteration and internal quotation marks omitted) (quoting Sarr v. BEF Foods, Inc., 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  A plaintiff must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled."  Id. (quoting Sarr, 2020 WL 729883, at *3).  Finally, "[a]lthough the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is 'well

settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" Id. (internal quotations omitted).

"Actions brought pursuant to [GBL] Section 349 [or Section 350] must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute." Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2, 419 F. Supp. 3d 668, 699 (S.D.N.Y. 2019) (quoting Statler v. Dell, Inc., 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012)) "Accrual is not dependent upon any later date when discovery of the alleged deceptive practice is said to occur." Statler, 775 F. Supp. 2d at 484; Wender v. Gilberg Agency, 276 A.D.2d 311, 312 (1st Dept. 2000) (holding that for GBL Section 349 claims, "the date of discovery rule is not applicable and cannot serve to extend that limitations period").

**B.**     **Analysis**

**1.**     **Whether Plaintiffs' GBL Claims Are Time-Barred**

Plaintiffs paid the application fee for their Columbia applications in 2018, but the Complaint was not filed until February 7, 2023.  (Cmplt. (Dkt. No. 1))  Accordingly, absent equitable tolling, their GBL claims are time-barred.  Plaintiffs argue that equitable tolling applies.  (Pltf. Opp. (Dkt. No. 29) at 19)

"Under New York law, '[e]quitable estoppel [or tolling] may arise when the defendant misrepresents to the plaintiff the time within which he may begin suit.  Equitable estoppel may also arise when affirmative fraudulent statements are made which conceal from the plaintiff facts essential to make out the cause of action.'" Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 264 (S.D.N.Y. 2006) (quoting Renz v. Beeman, 589 F.2d 735, 750 (2d Cir. 1978)). "However, without adequate pleading, the issue is not properly raised and therefore cannot defeat a motion to dismiss based on statute of limitations grounds." Abercrombie, 438 F. Supp.

2d at 265.  Moreover, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." Abercrombie, 438 F. Supp. 2d at 265 (quoting Kaufman v. Cohen, 307 A.D.2d 113 (1st Dept. 2003)).  "In addition to this requirement, any claim that a defendant's fraudulent concealment bars invocation of a statute of limitations defense must comport with Fed. R. Civ. P 9(b) in that it must be sufficiently particularized." Abercrombie, 438 F. Supp. 2d at 266.

   "The doctrine of equitable estoppel usually comes into play when some conduct by a defendant after his initial wrongdoing has prevented the plaintiff from discovering or suing upon the initial wrong." Smith v. Smith, 830 F.2d 11, 13 (2d Cir. 1987).  "[E]quitable tolling is only appropriate in rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his rights." Vincent v. Money Store, 304 F.R.D. 446, 458 (S.D.N.Y. 2015) (quoting Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003)).

   "In some cases, however, the plaintiff may be able to prove this element by showing that 'the wrong itself was of such a nature as to be self-concealing.'" Vincent, 304 F.R.D. at 458 (quoting State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1083 (2d Cir. 1988)). "Principal among these are bid-rigging and price-fixing schemes:  'scheme[s] [that] necessarily include[ ] concealment of the existence of [the] conspiracy,' and thus 'proof of the conspiracy itself suffice[s] to prove concealment by the coconspirators.'" Id. (quoting Hendrickson Bros., 840 F.2d at 1084).  "Because accomplishing those schemes require affirmative acts of concealment, the plaintiffs in those cases do not need to show additional 'independent

affirmative steps' of concealment." Id. (citing In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig., 00 Civ. 7804, 2004 WL 487222, at *4 (S.D.N.Y. Mar. 12, 2004))

Here, Columbia's misrepresentations to U.S. News provide the basis for both Plaintiffs' GBL cause of action and their equitable tolling claim. (See Cmplt (Dkt. No. 1) ¶ 70 ("By representing to U.S. News that it possessed certain characteristics, qualifications, requirements, benefits, and levels of attainment that it knew itself not to possess, Columbia violated GBL § 349."); id. ¶ 80 ("Columbia engaged in false advertising in violation of GBL § 350" by "f[ee]d[ing] false data to U.S News, that unfairly and unjustifiably boosted its ranking, resulting in more students applying as a result and driving up application fee revenue."); Pltf. Opp. (Dkt. No. 29) at 20 (arguing that equitable tolling applies because "Columbia manipulated its data to pass itself off as an institution worthy of a higher [U.S. News] ranking than it actually deserved.") Plaintiffs' equitable tolling argument thus runs afoul of black letter law stating that "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." Abercrombie, 438 F. Supp. 2d at 265 (quoting Kaufman, 307 A.D.2d 113).

And while equitable tolling may apply where a plaintiff "'show[s] that it would have been impossible for a reasonably prudent person to learn' about his or her cause of action." Pearl v. City of Long Beach, 296 F.3d 76, 85 (2d Cir. 2002) (emphasis in original) (quoting Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985)), Plaintiffs have not argued, much less demonstrated, that Columbia's misrepresentations would have been impossible to detect prior to February 7, 2023, when they filed the Complaint.

Plaintiffs also do not provide a factual basis for equitable tolling in the Complaint. As discussed above, the facts justifying application of equitable tolling must be pled in the

complaint. In the absence of such pleading, equitable tolling cannot be raised. <u>Abercrombie</u>, 438 F. Supp. 2d at 265 ("without adequate pleading, [equitable tolling] is not properly raised and therefore cannot defeat a motion to dismiss based on statute of limitations grounds"); <u>see also</u> <u>Dep't of Econ. Dev. v. Arthur Andersen & Co.</u>, 747 F. Supp. 922, 943 (S.D.N.Y. 1990) (dismissing claim as time-barred because plaintiff made no allegation in complaint that "its failure to timely institute its third-party action was due to its justified reliance upon a misrepresentation" by adversary); <u>Moll v. U.S. Life Title Ins. Co. of N.Y.</u>, 700 F. Supp. 1284, 1293 (S.D.N.Y. 1988) ("Plaintiffs have not alleged that defendant caused them to delay in bringing suit on a known cause of action. On the contrary, plaintiffs repeatedly emphasize that they did not discover the alleged . . . violations until long after the limitations period had expired . . . . Equitable estoppel is therefore not appropriate in this case.").

The Court concludes that equitable tolling does not apply, and that accordingly Plaintiffs' GBL claims are time-barred.

## 2.   <u>Whether Plaintiffs Have Alleged an Actual Harm</u>

In seeking dismissal, Columbia also argues that Plaintiffs have not alleged that they "suffered an actual harm caused by a deceptive or misleading act or practice." (Def. Br. (Dkt. No. 26) at 14) "Although the Court has concluded that Plaintiff[s] adequately [pled] an injury-in-fact for purposes of Article III standing, whether Plaintiff[s] . . . properly alleged an injury for [their] N.Y. G.B.L. §§ 349 and 350 claims requires a separate inquiry." <u>Colpitts</u>, 527 F. Supp. 3d at 576; <u>cf.</u> <u>Borenkoff</u>, 2018 WL 502680, at *4 ("Although [plaintiff's] alleged injury is sufficient to confer Art. III standing, the Court concludes that it is insufficient to state a claim under GBL § 349.").

Columbia contends that, under New York law, "it is well-established that a GBL claim cannot be premised on a mere allegation that, but for the alleged deception, a plaintiff

would not have purchased the product." (Def. Br. (Dkt. No. 26) at 15 (citing <u>Small v. Lorillard Tobacco Co., Inc.</u>, 94 N.Y.2d 43, 52 (1999))

In response, Plaintiffs merely repeat their claim that Columbia's "deception led them to (1) pay $85 to apply to Columbia; and (2) forego the chance to apply to a school whose truthful data met the criteria to be included in the top 5 of [U.S. News'] rankings." (Pltf. Opp. (Dkt. No. 29) at 17-18)

<u>Small v. Lorillard Tobacco Co., Inc.</u>, 94 N.Y.2d 43 (1999) guides the Court's analysis of the actual harm issue here. In <u>Small</u>,

> Plaintiffs allege[d] that defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that [plaintiffs] would not have bought these cigarettes had they known that nicotine is an addictive drug; that the tobacco companies controlled the level of nicotine in their cigarettes to cause or maintain nicotine addiction; and, that the companies secretly used chemicals to enhance the addictive propensities of nicotine. Plaintiffs also assert[ed] that the companies suppressed research indicating that nicotine is addictive.

<u>Id.</u> at 51. Plaintiffs also argued that defendants' misrepresentations and deceptive practices "prevented them from making free and informed choices as consumers." <u>Id.</u> at 56. Plaintiffs did "not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor [did] they seek recovery for injury to their health as a result of their ensuing addiction." <u>Id.</u> Instead, plaintiffs "chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes." <u>Id.</u>

In rejecting plaintiffs' GBL claims, the New York Court of Appeals noted that plaintiffs' allegations "set[] forth deception as both act and injury," and ruled that plaintiffs had not "present[ed] a legally cognizable [GBL] injury." <u>Id.</u> at 56-57.

Under <u>Small</u>, "an actual injury claim under §§ 349 and 350 typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" <u>Braynina v. TJX Companies, Inc.</u>, 15 Civ.

5897 (KPF), 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016).  "This may be in the form of

an overpayment or 'price premium,' whereby a plaintiff pays more than she would have but for

the deceptive practice," "in the form of a deprival of contracted-for services," or in the form of

"other actual harm," such as adverse health effects.  Id.[3]

      Here, as in Small, Plaintiffs do not allege that the price they paid – the $85

Columbia application fee – was affected by Columbia's alleged misrepresentations, nor do they

seek to recover anything other than the application fee.  (See Cmplt. (Dkt. No. 1) ¶ 43 (stating

that the cost of a college application "is almost universally now $85"); id. ¶ 77 ("Columbia's

violations of GBL § 349, as described herein, have directly caused Plaintiff and the Class

members to have suffered ascertainable losses – each one paid an $85 application fee"); id ¶ 87

("Columbia's violations of GBL § 350, as described herein, have directly caused Plaintiff and the

Class members to have suffered ascertainable losses – each one paid an $85 application fee").

      Plaintiffs instead contend that – in addition to the application fee – the "actual

harm" they suffered was "forego[ing] the chance to apply to a school whose truthful data met the

criteria to be included in the top 5 of [U.S. News'] rankings."  (Pltf. Br. (Dkt. No. 29) 17-18)

According to Plaintiffs, they "were robbed of the ability to apply to a school ranked in the top 5

of the U.S. News rankings as a reach school." (Cmplt. (Dkt. No. 1) ¶ 67)  But the Complaint

---

[3] In attempting to distinguish Small, Plaintiffs cite to Orlander v. Staples, Inc., 802 F.3d 289 (2d Cir. 2015), in which the Second Circuit reversed a district court decision dismissing a GBL §§ 349-350 claim on the grounds that, inter alia, plaintiff had not pled actual injury.  Id. at 302.  In Orlander, plaintiff had purchased a computer from Staples, along with a two-year consumer protection plan.  Plaintiff alleged that Staples had failed to provide the services promised in the protection plan, and sought to recover the purchase price of the protection plan.  In reversing the district court's dismissal order, and in finding that plaintiff had adequately alleged actual harm, the Second Circuit noted that plaintiff alleged that he "did not receive the services that Defendant misleadingly told Plaintiff he was purchasing."  Id.  Accordingly, unlike in Small, Orlander was seeking damages for the "deprival of contracted-for services."  Id.; see also Braynina, 2016 WL 5374134, at *10.

contains no factual allegations suggesting that Plaintiffs' applications to Columbia prevented them from applying to other colleges and universities.

While Plaintiffs allege that – due to the standard $85 college application fee – "only a few . . . applications may be made" (id. ¶ 43), there is, of course, no university-imposed limit on the number of applications a student may submit, and the Complaint does not contend otherwise. While time constraints and financial circumstances may limit the number of applications a student submits, such personal limitations cannot generate a harm separate and distinct from the alleged misrepresentations at issue. To hold otherwise would have the injury determination turn on a plaintiff's financial circumstances or the amount of free time he or she has. Plaintiffs have cited no case suggesting that their "limited funds and time" theory of injury is valid under the GBL.[4] In any event, Plaintiffs have pled no facts suggesting that the number of college applications they submitted was limited either because of financial or time constraints.

Plaintiffs also contend that they did not receive – or received a diminished version of – what they paid for: the chance to be considered for admission by a U.S. News "top 5" ranked university. (Pltf. Opp. (Dkt. No. 29) at 16-17) But Plaintiffs have not alleged any harm beyond the underlying misrepresentation. And as the New York Court of Appeals explained in Small, where plaintiffs' allegations "set[] forth deception as both act and injury," they have not "present[ed] a legally cognizable [GBL] injury." Small, 94 N.Y.2d at 56-57; see id. at 56

---

[4] Plaintiffs assert in their opposition brief that "[f]illing out applications and writing personal essays for Columbia came with a cost of time and effort that would not have been spent but-for Columbia's deception." (Pltf. Opp. (Dkt. No. 29) at 16) The Complaint does not contain any allegations about the "time and effort" that Plaintiffs spent on their Columbia applications, however, and "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

(because plaintiffs "chose expressly to confine the relief sought solely to monetary recoupment of the [application fee]," their GBL claim "sets forth deception as both act and injury").

And while Plaintiffs allege that – if they had known of Columbia's misrepresentations – Columbia "would not have been a school that the Plaintiffs or the Class would have applied to" (Cmplt. (Dkt. No. 1) ¶ 67; Pltf. Opp. (Dkt. No. 29) at 16 (arguing that Plaintiffs were injured "by paying $85 to apply to Columbia, when had the truth been known, they would not have")), such a claim is foreclosed by Small. See Small, 94 N.Y.2d at 56 (holding that an argument "that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349" is "legally flawed"); Irvine v. Kate Spade & Co., 16 Civ. 7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) ("To state a claim under Section 349 . . . it is not sufficient for a plaintiff merely to plead that she would not have purchased a product but for a deceptive practice.").

In their opposition brief, Plaintiffs also suggest "overpayment" or a "price premium" as a possible injury. (Pltf. Opp. (Dkt. No. 29) at 18)  This theory of injury is likewise not pled in the Complaint and therefore may not be considered in resolving Columbia's motion to dismiss. O'Brien, 719 F. Supp. at 229.  In any event, this theory of injury is misplaced.

"A 'price premium' injury exists when a misrepresentation causes the plaintiff to overpay for a product. . . . A price premium injury may be alleged by showing either that because of a misrepresentation the plaintiff received a good worth less than what he paid for, i.e., a good of inferior quality, or that because of a misrepresentation the plaintiff paid an inflated price." Belcastro v. Burberry Ltd., 16 Civ. 1080 (VEC), 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017) (internal citation omitted).

In the Complaint, Plaintiffs plead that the cost of a college application "is almost universally now $85." (Cmplt. (Dkt. No. 1) ¶ 43) Accordingly, Plaintiffs' argument in their opposition that Columbia's $85 application fee was inflated contradicts the Complaint's allegations.

For all these reasons, Columbia's motion to dismiss Plaintiff's GBL claims will be granted.[5]

## IV.   UNJUST ENRICHMENT

Columbia argues that Plaintiffs' unjust enrichment claim should be dismissed as duplicative of their GBL claims. (Def. Br. (Dkt. No. 26) at 20) Plaintiffs respond that "while Plaintiffs certainly cannot recover for both a GBL claim and an equitable claim, they may plead them in the alternative." (Pltf. Opp. (Dkt. No. 29) at 28)

### A.   Applicable Law

"Under New York law, '[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 248 (S.D.N.Y. 2021) (quoting Parks v. Ainsworth Pet Nutrition, LLC, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019)). "[U]njust enrichment is not a catchall cause of action to be used when others fail." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012). "Courts regularly dismiss unjust enrichment claims brought as an alternative theory when the claims rely on a similar set of facts as the plaintiff's

---

[5] "Because the Court dismisses the individual claims of each of the named plaintiffs, the Court lacks jurisdiction over the state-law class claims of the unnamed putative class members." Chufen Chen v. Dunkin' Brands, Inc., 2018 WL 9346682, at *8 (E.D.N.Y. Sept. 17, 2018), aff'd, 954 F.3d 492 (2d Cir. 2020) (collecting cases).

other claims." <u>Bermudez v. Colgate-Palmolive Co.</u>, 667 F. Supp. 3d 24, 46 (S.D.N.Y. 2023).

"Two claims are duplicative of one another if they 'arise from the same facts . . . and do not

allege distinct damages.'"  <u>NetJets Aviation, Inc. v. LHC Commc'ns, LLC</u>, 537 F.3d 168, 175

(2d Cir. 2008) (omission in original) (quoting <u>Sitar v. Sitar</u>, 50 A.D.3d 667 (2d Dept. 2008)).

      "[C]ourts in the Second Circuit have consistently held that unjust enrichment

claims [that] are duplicative of GBL claims [should be dismissed]." <u>Barton</u>, 535 F. Supp. 3d at

249 (collecting cases); <u>see also</u> <u>Alce v. Wise Foods, Inc.</u>, 17 Civ. 2402 (NRB), 2018 WL

1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim where

allegations were a "mere regurgitation of those made with respect to plaintiffs' . . . claims under

the GBL"); <u>Parks v. Ainsworth Pet Nutrition, LLC</u>, 377 F. Supp. 3d 241, 248-49 (S.D.N.Y.

2019) (plaintiff's unjust enrichment claim "duplicates his [GBL and] other claims based on the

same alleged misrepresentation that the [p]roducts are 'natural,' and is therefore dismissed");

<u>Borenkoff v. Buffalo Wild Wings, Inc.</u>, 16 Civ. 8532 (KBF), 2018 WL 502680, at *5 (S.D.N.Y.

Jan. 19, 2018) (holding that where unjust enrichment allegations are "entirely duplicative of [a

plaintiff's] GBL § 349 claim . . . [,] the unjust enrichment claim must be dismissed under New

York law"); <u>Grossman v. Simply Nourish Pet Food Co. LLC</u>, 516 F. Supp. 3d 261, 285

(E.D.N.Y. 2021) ("Because plaintiff's unjust enrichment claim under New York law is based on

the same allegations as her claims of violations of GBL §§ 349 and 350 . . ., and because plaintiff

has not shown how her unjust enrichment claim differs from her other New York claims, the

Court dismisses plaintiff's unjust enrichment claim as duplicative of her other New York

claims.").

    **B.**    <u>**Analysis**</u>

      Here, Plaintiffs' unjust enrichment claim is premised on the same factual

allegations underlying their GBL claims, and seeks the same damages:

As a result of Columbia's false, immoral, unethical, and unscrupulous conduct, it was enriched at the expense of the proposed class through the receipt of an application fee from each class member, and it is against equity and good conscience to permit Columbia to retain such enrichment.

. . . .

Under the theory of unjust enrichment, then, Columbia should make restitution to each class member the amount of their application fee, plus interest.

(Cmplt. (Dkt. No. 1) ¶¶ 93-94)

Plaintiffs do not dispute that their unjust enrichment claim is duplicative of their GBL claims.  They instead argue that "[t]he operative inquiry is whether the claim for unjust enrichment could allow the plaintiff to recover in the event its GBL claims prove unsuccessful." (Pltf. Opp. (Dkt. No. 29) at 27)

"[C]ourts allow plaintiffs to plead unjust enrichment in the alternative in some situations" including, for example, where an underlying contract claim may fail because the alleged contract is unenforceable. Freedom Mortg. Corp. v. Tschernia, 20 Civ. 1206 (AJN), 2021 WL 1163807, at *6 (S.D.N.Y. Mar. 26, 2021).  But "even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).

Here, Plaintiffs have not explained why their unjust enrichment claim is not duplicative of their GBL claims.  Plaintiffs attempt to draw a distinction based on the elements of a GBL claim versus an unjust enrichment claim, but the bar on duplicative claims "focuses on facts and damages, [and] says nothing about a comparison of elements." Cooper v. Anheuser-Busch, LLC, 553 F. Supp. 3d 83, 117 (S.D.N.Y. 2021) (emphasis in original).  Plaintiffs also argue that "since [their unjust enrichment] claim is in equity, it might result in a different remedy." (Pltf. Opp. (Dkt. No. 29) at 28)  But in the Complaint, Plaintiffs seek the same remedy

for their GBL and unjust enrichment claims:  return of the $85 application fee.  (Cmplt. (Dkt. No. 1) ¶ 94 ("Under the theory of unjust enrichment, then, Columbia should make restitution to each class member the amount of their application fee, plus interest."); id. ¶ 77 ("Columbia's violations of GBL § 349, as described herein, have directly caused Plaintiff and the Class members to have suffered ascertainable losses – each one paid an $85 application fee they would not have to Columbia had the truth been known – and defendant is liable for that amount because they were the proximate cause of those damages."); id. ¶ 87 ("Columbia's violations of GBL § 350, as described herein, have directly caused Plaintiff and the Class members to have suffered ascertainable losses – each one paid an $85 application fee they would not have to Columbia had the truth been known – and defendant is liable for that amount because it was the proximate cause of those damages."))

"To the extent any of Plaintiff's other claims succeed, the unjust enrichment claim would be duplicative; to the extent they do not succeed, the unjust enrichment claim would not remedy the defects."  Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019).  Accordingly, Plaintiffs' unjust enrichment claim will be dismissed as duplicative of their GBL claims.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted.  The

Clerk of Court is directed to terminate the motion (Dkt. No. 25), enter judgment for Defendant,

and close this case.

Dated: New York, New York
       March 22, 2024

                                      SO ORDERED.

                                      _____
                                      Paul G. Gardephe
                                      United States District Judge