UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ALEXANDRA KOENIGSBERG,
MAXWELL KOENIGSBERG, and OLGA
STAMBLER, Individually and On Behalf of
All Others Similarly Situated,

                            Plaintiffs,

         v.

THE BOARD OF TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY
OF NEW YORK,

                            Defendant.

**ORDER**

23 Civ. 1044 (PGG)

---------------------------------------------------------------

PAUL G. GARDEPHE, U.S.D.J.:

        This is a putative class action brought pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  (Cmplt. (Dkt. No. 1))  Plaintiffs are Alexandra Koenigsberg and Maxwell Koenigsberg – who applied for admission to Columbia University in the fall of 2018 – and their mother, Plaintiff Olga Stambler, who paid the $85 application fee. (Id. ¶¶ 1-3)  Defendant is The Board of Trustees of Columbia University in the City of New York ("Columbia" or the "University").

        Plaintiffs contend that Columbia provided false data to U.S. News and World Report ("U.S. News") for purposes of that organization's college rankings.  The false data reported by Columbia allegedly led to a higher rating in the U.S. News college rankings.  (Id. ¶ 35)  Plaintiffs say that they would not have applied to Columbia in the fall of 2018 – and that their mother would not have paid the $85 application fee – "had they known the truth about Columbia's data and what should have been its real ranking in the U.S. News service." (Id. ¶ 47)

The Complaint asserts violations of Sections 349 and 350 of the New York General Business Law (the "GBL") and an unjust enrichment claim under New York law.  (Id. ¶¶ 57-94)

In a March 22, 2024 order (the "Dismissal Order"), this Court granted Defendant's motion to dismiss.  (Dismissal Order (Dkt. No. 33))  Plaintiffs now move for reconsideration pursuant to Rules 59(e) and 60(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, Plaintiffs' motion will be denied.

### BACKGROUND[1]

I.  **THE COMPLAINT'S FACTUAL ALLEGATIONS**

The Complaint alleges that Columbia University's rise to second place in the U.S. News college rankings "was due to the reporting of false or misleading data, . . . and not to educational or student life improvements."  (Cmplt. (Dkt. No. 1) ¶ 20)  According to Plaintiffs, "beginning around 2010-2011, Columbia began reporting false and misleading data to U.S. News in at least . . . seven ways."  (Id. ¶ 22)  "[T]hese areas of false reporting were made known to the public by Michael Thaddeus, a mathematics professor at Columbia, when he published an article in February and March 2022 revealing the false and misleading data and how Columbia used that false and misleading data to manipulate its rankings within the US News rankings."  (Id. ¶ 36)  Plaintiffs contend that – "[h]ad Columbia reported its actual data to U.S. News" – "it would not have ranked in the top 5 or even top 10 U.S. national universities" in the U.S. News rankings.  (Id. ¶ 35)

According to Plaintiffs, "each student's application to a reach school is a lottery ticket.  And because the cost of that lottery ticket is almost universally now $85, only a few such

---

[1] The relevant facts and procedural history are set forth in greater detail in this Court's March 22, 2024 order granting Defendant's motion to dismiss (the "Dismissal Order").  (See Dismissal Order (Dkt. No. 33))

applications may be made." (Id. ¶ 43) According to the Complaint, "[n]either plaintiff Koenigsberg would have applied for admission to Columbia and plaintiff Stambler would not have paid for such applications had they known the truth about Columbia's data and what should have been its real ranking in the U.S News service." (Id. ¶ 47)

## II.   PROCEDURAL HISTORY

The Complaint was filed on February 7, 2023. (Dkt. No. 1) On July 19, 2023, Columbia moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Def. Mot. (Dkt. No. 25))

On March 22, 2024, this Court granted the Defendant's motion and dismissed the Complaint in its entirety. (Dismissal Order (Dkt. No. 33))

On April 22, 2024, Plaintiffs moved to vacate or amend the judgment pursuant to Fed. R. Civ. P. 59(e) and 60(b)(6). (Pltf. Br. (Dkt. No. 36)) Defendant filed its opposition on May 8, 2024, (Def. Opp. (Dkt. No. 39)), and Plaintiffs filed a reply on May 15, 2024. (Ptlf. Reply (Dkt. No. 40))

## III.   THE DISMISSAL ORDER

On July 19, 2023, Columbia moved to dismiss the Complaint for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. Rule 12(b)(6). (Def. Mot. (Dkt. No. 25))

As to standing, Columbia argued that "Plaintiffs do not allege a concrete injury and therefore lack Article III standing." (Def. Br. (Dkt. No. 26) at 11)[2] This Court concluded that Plaintiffs had adequately alleged an injury for purposes of Article III standing, given their

---

[2] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

allegation that "they would not have paid the $85 fee to apply to Columbia if they had known that Columbia was not in fact a 'true' 'top 5' university." (Dismissal Order (Dkt. No. 33) at 12) "'There is some "concrete and particularized" injury in paying for one item and receiving another, even if you ultimately receive the 'benefit of your bargain' from a purely objective economic standpoint." (Id. (quoting Borenkoff v. Buffalo Wild Wings, Inc., 16 Civ. 8532 (KBF), 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018).

As for Columbia's argument that the Complaint fails to state a claim, this Court concluded that Plaintiffs' GBL claims are time-barred. (Dismissal Order (Dkt. No. 33) at 14-17 Plaintiffs paid the application fee for their Columbia applications in 2018 (Cmplt. (Dkt. No. 1) ¶¶ 1-3), but the Complaint was not filed until February 7, 2023. (Cmplt. (Dkt. No. 1)) "Actions brought pursuant to [GBL] Section 349 [or Section 350] must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute." Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2, 419 F. Supp. 3d 668, 699 (S.D.N.Y. 2019) (quoting Statler v. Dell, Inc., 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012))

Given Plaintiffs' five-year delay in filing suit, this Court found that, "absent equitable tolling, [Plaintiffs'] GBL claims are time-barred." (Dismissal Order (Dkt. No. 33) at 14) As to the applicability of equitable tolling, this Court noted that this doctrine "does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." (Id. at 15 (quoting Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (quoting Kaufman v. Cohen, 307 A.D.2d 113 (1st Dept. 2003)). Because "Columbia's misrepresentations to U.S. News provides the basis for both Plaintiffs' GBL cause of action and their equitable tolling claim," equitable

4

tolling does not apply. Accordingly, based on the allegations of the Complaint, Plaintiffs' GBL claims are time-barred.

This Court further found that – even if Plaintiffs' GBL claims had been timely filed – Plaintiffs have not "present[ed] a legally cognizable [GBL] injury," because they improperly "set[] forth deception as both act and injury," (Id. at 18 (quoting Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 56-57 (1999)) And to the extent that Plaintiffs proffered a theory of "price premium" injury in their opposition papers, "[t]his theory of injury [wa]s . . . not pled in the Complaint and therefore may not be considered in resolving Columbia's motion to dismiss." (Id. at 21) In any event, Plaintiffs pled in the Complaint "that the cost of a college application 'is almost universally now $85,'" so "Plaintiffs' argument in their opposition that Columbia's $85 application fee was inflated contradicts the Complaint's allegations." (Id. at 22 (quoting (Cmplt (Dkt. No. 1)))

Finally, this Court dismissed Plaintiffs' unjust enrichment claim as duplicative of their GBL claims. (Id. at 23-25)

IV. **PROPOSED AMENDED COMPLAINT**

Plaintiffs have attached a proposed Amended Complaint to their motion. (See Pltf. Br., Ex. A ("Am. Cmplt.") (Dkt. No. 36-1))

In their proposed Amended Complaint, Plaintiffs add allegations supporting a price premium theory of injury, asserting that "in 2018, the top 10 colleges charged an average of $82.50 to apply[,]" but "[f]or schools ranked 11 through 20, the average application fee was $73." (Id. ¶ 41) "In 2018, Columbia charged $85 per application, a price premium it was able to obtain as a result of its manipulation of the [U.S. News] rankings." (Id. ¶ 42) Plaintiffs claim that, "[i]f not for the manipulation, [Columbia's] application fee would have been the highest of the 11th to 20th ranked schools and represent a $10 premium over the other two schools it would

5

have likely tied for 18th." (Id.) The Amended Complaint goes on to state that Plaintiffs "would not have applied for admission or paid the price premium to apply to Columbia . . . had they known the truth about Columbia's data." (Id. ¶ 49)

The proposed Amended Complaint also includes new allegations supporting Plaintiffs' claim that Columbia's conduct was "self-concealing," and could not have been discovered by the exercise of reasonable diligence. (Id. at 13) According to Plaintiffs, "Defendants' deceptive acts necessitated secrecy. If [U.S. News] or the public discovered the information provided by Defendants was false, Columbia's ranking would have dropped precipitously." (Id. ¶ 60) "For a dozen years, no one was able to identify that Columbia was reporting false information." Indeed, "[u]ntil Professor Thaddeus's report, only Defendant[] [was] aware of [its] deceptive actions." (Id. ¶ 62) According to Plaintiffs, they "could not have discovered the deception at an earlier date by the exercise of due diligence because of the nature of the deception." (Id. ¶ 65)

## DISCUSSION

I.    **LEGAL STANDARDS**

    A.    **Reconsideration Under Rule 59(e)**

"Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Walsh v. Townsquare Media, Inc., 565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021) (quotation marks and citations omitted). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614

(S.D.N.Y. 2000)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995). "The decision to grant or deny a motion for reconsideration is 'committed to the sound discretion of the district court.'" Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting Wilder v. News Corp., 11 Civ. 4947 (PGG), 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016) (quoting Liberty Media Corp. v. Vivendi Universal S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012))).

### B.     Relief from Judgment Under Rule 60(b)

Federal Rule of Civil Procedure 60(b) "sets forth the grounds on which a court, in its discretion, can rescind or amend a final judgment or order." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). "Since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Id. "A motion seeking such relief is addressed to the sound discretion of the district court." Id.

"Rule 60(b)(6) authorizes a district court to grant relief to a moving party for 'any other reason that justifies relief.'" Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting Fed. R. Civ. P. 60(b)(6)). While Rule 60(b)(6) affords district courts broad discretion "'to do justice in a particular case,'" id. (quoting Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986)), a party "seeking to avail itself of the Rule [must] demonstrate that 'extraordinary circumstances' warrant relief." Id. (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988); Nemaizer, 793 F.2d at 63). Moreover, Rule 60(b)(6) "applies only when no other subsection [of Rule 60(b)] is available." Nemaizer, 793 F.2d at 63.

7

C.    **Leave to Amend**

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).

A court may properly deny leave to amend in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Murdaugh v. City of New York, 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

An amendment is futile where it is legally insufficient on its face such that the amended claim could not survive a motion to dismiss. Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002). Accordingly, "when a proposed amendment is challenged as 'futile,' the Rule 12(b)(6) standards become relevant." Polanco v. NCO Portfolio Mgmt., Inc., 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)

8

(quoting Twombly, 550 U.S. at 555). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint[,]" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

## II.  ANALYSIS

Plaintiffs have moved to alter or amend the judgment such that they may file their proposed Amended Complaint. Defendant opposes the application on grounds of futility, arguing that nothing in the proposed Amended Complaint addresses the fact that Plaintiffs' GBL claims are time-barred. (Def. Br. (Dkt. No. 39) at 4-6)

"As a procedural matter, '[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b).'" Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011) (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). The Second Circuit has observed that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." Id. (quoting Ruotolo, 514 F.3d at 191). Finally, the Second Circuit has instructed that "postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." Id. In this regard, "even when a plaintiff has not had one such opportunity [to replead], a

district court may properly deny her post-judgment motion for leave to amend if her proposed amendments would be futile." Shull v. TBTF Prods., Inc., No. 20-3529, 2021 WL 3027181, at *3 (2d Cir. July 19, 2021) (summary order).

Here, Plaintiffs' motion to amend or alter the judgment pursuant to Rule 59(e) and Rule 60(b)(6) is properly denied, because Plaintiffs' proposed amendments would be futile. As discussed in the Dismissal Order, a three-year statute of limitations applies to Plaintiffs' GBL claims; Plaintiffs suffered their alleged injury when they applied to Columbia in the fall of 2018; and the instant lawsuit was not filed until February 7, 2023. Accordingly, absent equitable tolling, Plaintiffs' GBL claims expired in the fall of 2021 and are time-barred.

As an initial matter, and as is also explained in the Dismissal Order, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." Abercrombie, 438 F. Supp. 2d at 265 (quoting Kaufman, 307 A.D.2d 113); see also De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("For equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim – the later fraudulent misrepresentation must be for the purpose of concealing the former tort."). In the proposed Amended Complaint – as in the Complaint – Plaintiffs rely on Columbia's alleged misrepresentations to U.S. News both as the basis for their GBL claims and as the basis for their equitable tolling argument. (See Am. Cmplt. (Dkt. No. 36-1) ¶ 59 ("Defendants provided false information to [U.S. News] in order to raise Columbia's ranking" and these "deceptive acts . . . necessitated secrecy."); id. ¶ 87 ("By representing to U.S. News that it possessed certain characteristics, qualifications, requirements, benefits, and levels of attainment that it knew itself not to possess, Columbia violated GBL § 349."); id. ¶ 97 ("Columbia engaged in false


district court may properly deny her post-judgment motion for leave to amend if her proposed amendments would be futile." Shull v. TBTF Prods., Inc., No. 20-3529, 2021 WL 3027181, at *3 (2d Cir. July 19, 2021) (summary order).

Here, Plaintiffs' motion to amend or alter the judgment pursuant to Rule 59(e) and Rule 60(b)(6) is properly denied, because Plaintiffs' proposed amendments would be futile. As discussed in the Dismissal Order, a three-year statute of limitations applies to Plaintiffs' GBL claims; Plaintiffs suffered their alleged injury when they applied to Columbia in the fall of 2018; and the instant lawsuit was not filed until February 7, 2023. Accordingly, absent equitable tolling, Plaintiffs' GBL claims expired in the fall of 2021 and are time-barred.

As an initial matter, and as is also explained in the Dismissal Order, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action." Abercrombie, 438 F. Supp. 2d at 265 (quoting Kaufman, 307 A.D.2d 113); see also De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("For equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim – the later fraudulent misrepresentation must be for the purpose of concealing the former tort."). In the proposed Amended Complaint – as in the Complaint – Plaintiffs rely on Columbia's alleged misrepresentations to U.S. News both as the basis for their GBL claims and as the basis for their equitable tolling argument. (See Am. Cmplt. (Dkt. No. 36-1) ¶ 59 ("Defendants provided false information to [U.S. News] in order to raise Columbia's ranking" and these "deceptive acts . . . necessitated secrecy."); id. ¶ 87 ("By representing to U.S. News that it possessed certain characteristics, qualifications, requirements, benefits, and levels of attainment that it knew itself not to possess, Columbia violated GBL § 349."); id. ¶ 97 ("Columbia engaged in false

advertising in violation of GBL § 350" by "f[ee]d[ing] false data to U.S News, that unfairly and unjustifiably boosted its ranking, resulting in more students applying as a result and driving up application fee revenue."))

Moreover, the proposed Amended Complaint's new allegation that "[t]ens of thousands of highly intelligent students and their parents could not, and did not, discover[] the truth because the data required to disprove the Columbia disclosures was, in whole or in part, available only to those with insider knowledge or expertise in the area" (Am. Cmplt. (Dkt. No. 36-1) ¶ 72) does not demonstrate that equitable tolling applies.  These new allegations do not constitute the "exceptional circumstances" that are necessary for application of equitable tolling. Vincent v. Money Store, 304 F.R.D. 446, 458 (S.D.N.Y. 2015).  For example, while the Amended Complaint asserts that "the data required to disprove the Columbia disclosures was, in whole or in part, available only to those with insider knowledge," the Amended Complaint cites to publicly available data. (See Am. Cmplt. (Dkt. No. 36-1) ¶ 67 ("Professor Thaddeus was only able to determine the erroneous class size reporting to [U.S. News] by his knowledge of the existence of the Directory of Classes at Columbia."); id. ¶ 68 ("To determine the percentage of faculty with terminal degrees, Professor Thaddeus waded through the 958 faculty to determine the percentage with terminal degrees in their fields."); id. ¶ 69 (Professor Thaddeus "looked to Columbia's filings with the National Center for Education Statistics, a federal agency.")).

And while the proposed Amended Complaint asserts that "[t]ens of thousands of highly intelligent students and their parents could not, and did not, discover[] the truth [about the false data that Columbia had provided to U.S. News]" (Am. Cmplt. (Dkt. No. 36-1) ¶ 72), the test for equitable tolling does not turn on whether others detected a defendant's misrepresentations.  The Second Circuit has instead instructed that a plaintiff seeking application

11

of equitable tolling must "'show that it would have been <u>impossible</u> for a reasonably prudent person to learn' about his or her cause of action." <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 85 (2d Cir. 2002) (emphasis in original) (quoting <u>Miller v. Int'l Tel. & Tel. Corp.</u>, 755 F.2d 20, 24 (2d Cir. 1985)). Given that Professor Thaddeus relied on publicly available sources in asserting that the data Columbia had provided to U.S. News was false, the Amended Complaint has not plausibly alleged that it was "impossible" for a "reasonably prudent person to learn [of Columbia's misrepresentations]."

The Second Circuit's use of the term "impossible" reflects the fact that "equitable tolling will not be invoked unless . . . [P]laintiff[s] w[ere] prevented in some extraordinary way from exercising [their] rights." <u>Graham v. HSBC Mortg. Corp.</u>, 18 Civ. 4196 (KMK), 2020 WL 5663394, at *5 (S.D.N.Y. Sept. 23, 2020) (internal citations and quotations omitted). Columbia's alleged misrepresentations of publicly available data to U.S. News do not constitute such an exceptional circumstance.

"Equitable tolling is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient." <u>De Sole</u>, 974 F. Supp. 2d at 319 (internal citations and quotations omitted); <u>Smith v. Smith</u>, 830 F.2d 11, 13 (2d Cir. 1987) ("The doctrine of equitable estoppel usually comes into play when some conduct by a defendant after his initial wrongdoing has prevented the plaintiff from discovering or suing upon the initial wrong."). None of the Amended Complaint's new allegations show that Columbia "took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." <u>State of N.Y. v. Hendrickson Bros.</u>, 840 F.2d 1065, 1083 (2d Cir. 1988). Plaintiffs' conclusory allegation that "Defendant[']s

conduct is self-concealing" does not suffice. (Am. Cmplt. (Dkt. No. 36-1) at 13 (capitalization modified))

Finally, even if this Court were to conclude that equitable tolling applied, such a ruling would not assist Plaintiffs in addressing their statute of limitations problem.

Equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996); see Menominee Indian Tribe v. United States, 577 U.S. 250, 255 (2016) (same). A litigant who has been "induced by fraud, misrepresentations or deception to refrain from filing a timely action" may invoke the doctrine of equitable tolling, Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (citation and internal quotation marks omitted), but "only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Menominee Indian Tribe, 577 U.S. at 255 (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)).

As to the first element, the party seeking equitable tolling must "show diligent pursuit of his claim 'throughout the period he seeks to toll.'" Harper v. Ercole, 648 F.3d 132, 139 (2d Cir. 2011) (emphasis omitted) (quoting Belot v. Burge, 490 F.3d 201, 205 (2d Cir. 2007)).

As to the second element, "[t]he term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Id. at 137 (citation omitted). "To show that extraordinary circumstances prevented . . . filing . . . on time, [a plaintiff] must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (citation and internal

quotation marks omitted). An example of an extraordinary circumstance is where "a plaintiff establishes that: (1) the defendant concealed from him the existence of his cause of action; [and] (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action." Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (citing Hendrickson Bros., 840 F.2d at 1083).

"Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (internal citations, quotation marks, and alterations omitted). Indeed, the Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). The issue "'is not whether [p]laintiff was in possession of all of the information necessary to prevail on his claims, but whether [p]laintiff had enough information to commence a lawsuit.'" De Sole, 974 F. Supp. 2d at 318 (quoting Statler, D.C. v. Dell, Inc., 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011)).

If the diligence and extraordinary circumstances requirements are met "throughout the period to be tolled," then "the statute of limitations is suspended for the duration of the extraordinary circumstances supporting tolling." Harper, 648 F.3d at 136, 139. The statute of limitations may not be tolled "in perpetuity," however. Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 325-26 (2d Cir. 2004). Once the extraordinary circumstances that justify tolling end – for example, when the fraud was or should have been discovered by plaintiff – then the "link of causation between the extraordinary circumstances and the failure to file is broken." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). This rule reflects the fact that "'[d]ue diligence on the part of a plaintiff in bringing [an] action' . . . [is] an essential element of
14

equitable relief.'"  Abbas, 480 F.3d at 642 (citing Doe v. Holy See, 17 A.D.3d 793, 794 (3d Dept. 2005)).  To permit "tolling to continue beyond [a] point [when plaintiffs become aware of their cause of action] would quite certainly be inequitable and inconsistent with the general purpose of statutes of limitations:  'to protect defendants against stale or unduly delayed claims.'"  Credit Suisse Sec. LLC v. Simmonds, 566 U.S. 221, 211, 227 (2012) (emphasis in original) (quoting John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008)).

Once equitable tolling ends, the statute of limitations is not reset "anew."  Harper, 648 F.3d at 141 (equitable tolling "simply restarts the limitations clock where it was stopped by equity") (citing Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001)); see Tristar Corp. v. Freitas, 84 F.3d 550, 553 (2d Cir. 1996) ("Equitable tolling of a statute means only that the running of the statute is suspended, not that the limitations period begins over again.") (citation omitted).  However, "the tolling period 'must be sufficient to permit the filing of a [complaint] on or before the earliest date after the [extraordinary circumstances] by which that [plaintiff], acting with reasonable diligence, should have filed his or her [lawsuit].'"  Harper, 648 F.3d at 140-41 (quoting Valverde, 224 F.3d at 134); see Abbas, 480 F.3d at 642 (requiring a plaintiff to establish that the action "was brought within a reasonable period of time" after he or she is aware of a possible claim).

Here, as discussed above, Plaintiffs suffered their GBL injury in the fall of 2018, when they applied to Columbia and paid the application fee.  Because GBL claims are subject to a three-year statute of limitations, those claims expired in the fall of 2021, absent application of equitable tolling.  According to the proposed Amended Complaint, Professor Thaddeus "published an article in February and March 2022 revealing the false and misleading data and how Columbia used that false and misleading data to manipulate its rankings within the US

15

News rankings." (Am. Cmplt. (Dkt. No. 36-1) ¶ 36)  Accordingly, Plaintiffs were on notice of their right to sue as of February or March 2022.  But the Complaint in this action was not filed until February 7, 2023.  (Cmplt. (Dkt. No. 1)

Any "extraordinary circumstances" that justified equitable tolling ended by March 2022, see Dowe v. Leeds Brown L., P.C., 419 F. Supp. 3d 748, 764 (S.D.N.Y. 2019) (finding that, after the facts that plaintiffs relied on "were publicly reported" in The New York Times and Newsweek articles, "plaintiffs could have discovered the facts underlying their claims in the exercise of reasonable diligence"), aff'd sub nom, Dowe v. Leeds, Morelli & Brown PC, No. 21-3069, 2023 WL 3986373 (2d Cir. June 14, 2023), and any further delay in filing suit was caused by Plaintiffs' failure to use reasonable diligence in uncovering the facts.  See Harper, 648 F.3d at 139 ("equitable tolling should be . . . circumscribed to the period for which diligence and causation are established").

Because the Complaint was not filed until February 7, 2023 – nearly a year after Plaintiffs were on notice of their GBL claims – Plaintiffs did not bring their GBL claims within "a reasonable period of time" after learning of their right to sue.  Equitable tolling thus does not assist Plaintiffs in salvaging their claims.  See Abbas, 480 F.3d at 642 (requiring plaintiff to establish that action "was brought within a reasonable period of time" after becoming aware of a possible claim); Simmonds, 566 U.S. at 221 ("Tolling therefore ceases when fraudulently concealed facts are, or should have been, discovered by the plaintiff.").

For all these reasons, the proposed Amended Complaint's new allegations do not assist Plaintiffs in resolving the time-bar issue.  Accordingly, amendment would be futile, and Plaintiffs' motion to vacate or amend the judgment will be denied.

## CONCLUSION

Plaintiffs' motion to vacate or amend the judgment is denied. The Clerk of Court is directed to terminate the motion. (Dkt. No. 36)

Dated: New York, New York
      August 20, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge